_____
)
)
**JOHN HATTON,**                           )
)
         *Plaintiff,*                   )
)
         **v.**                            )        **No. 16-cv-11341-DJC**
)
**JOHN MULLAN and PAUL HAYWARD,**          )
)
         **Defendants.**                )
)
)
)
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                         **August 7, 2018**

## I.    Introduction

      Plaintiff John Hatton ("Hatton") brings claims against Defendants John Mullan ("Mullan") and Paul Hayward ("Hayward"), two officers in the Boston Police Department (collectively, "the Defendants"), related to the arrest of Hatton on September 19, 2013. Hatton brings claims for excessive force under 42 U.S.C. § 1983, arrest without probable cause under 42 U.S.C. § 1983, retaliatory arrest under 42 U.S.C. § 1983, malicious prosecution under federal and state law and violation of the Massachusetts Civil Rights Act ("MCRA"). D. 1. The Defendants seek summary judgment with respect to all of Hatton's claims against Hayward, and all of Hatton's claims against Mullan except the excessive use of force claim. D. 42. For the following reasons, the Court DENIES the Defendants' motion.

## II.    Standard of Review

      The Court will grant summary judgment "only when the record reflects to genuine issues as to any material fact and indicates that the moving party is entitled to judgment as a matter of

law." Morelli v. Webster, 552 F.3d 12, 18 (1st Cir. 2009). A genuine dispute of material fact exists where the evidence with respect to that fact "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of demonstrating the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). The court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (citation omitted).

III. **Factual Background**

The following facts are undisputed unless otherwise noted and are taken from the parties' statements of facts, D. 44; D. 47; D. 48; D. 52. On the night of September 19, 2013, Mullan and Hayward were dispatched to the area of 27 South Russell Street in Boston in response to a 911-caller who reported observing black males using crack cocaine in or near a courtyard. D. 49-1 at 1; D. 44 ¶ 1; D. 47 ¶ 1. The courtyard was in the rear of 60 Joy Street, a residential building. D. 44 ¶ 2; D. 47 ¶ 2. Mullan and Hayward arrived, observed two unidentified young black men in the courtyard sitting on a bench and began to speak with them. D. 44 ¶ 4; D. 47 ¶ 4. While Mullan and Hayward were speaking with the two individuals, a third individual, later identified as Kieran Pearson ("Pearson") entered the courtyard from the rear doors of 60 Joy Street. D. 44 ¶ 6; D. 47 ¶ 6. Pearson walked in the direction of the officers. D. 49-5 at 3; D. 44 ¶ 8; D. 47 ¶ 8. As Pearson approached the officers, he began to speak with them. D. 49-5 at 3; D. 44 ¶ 9; D. 47 ¶ 9. The parties dispute whether Pearson spoke in a loud voice to the officers. D. 44 ¶ 9; D. 47 ¶ 9. William Epiter-Smith ("Smith"), a resident of 60 Joy Street who was inside his second-story apartment, heard Pearson say to the two young black men in the courtyard that they did not have to provide Mullan and Hayward with identification. D. 44 ¶ 11; D. 47 ¶ 11. Smith left his apartment and

went down to the courtyard to speak with Pearson. D. 44 ¶ 12; D. 47 ¶ 12. Hatton, also a resident of 60 Joy Street, then entered the courtyard from South Russell Street, carrying a bag of groceries and a bag of takeout food. D. 48 ¶¶ 1, 3, 4; D. 52 ¶¶ 1, 3, 4. Hatton observed the officers, who were in uniform, speaking with the two unidentified young black men in the courtyard. D. 44 ¶ 14; D. 47 ¶ 14. Hatton then spoke to Pearson and Pearson stated that the two young men did not need to provide Mullan and Hayward with identification or answer their questions. D. 44 ¶¶ 16-17; D. 47 ¶¶ 16-17. Pearson, who is black, told Hatton, who is white, that he believed that the officers had stopped Pearson and the two young men because of their race. D. 48 ¶ 11; D. 52 ¶ 11. Mullan then requested that Pearson and Hatton stay out of the situation. D. 44 ¶ 18; D. 47 ¶ 18. The parties dispute how far Mullan was from Pearson and Hatton at the time; Hatton contend that he and Pearson were thirty or forty feet away from Mullan and Hayward and the Defendants contend that they were one or two arms' lengths apart. D. 48 ¶ 10; D. 52 ¶ 10.

From here, the two accounts of the parties diverge significantly. Hatton contends that the Defendants walked the two unidentified young men toward the gate to exit the courtyard and then returned to where Pearson and Hatton were standing. D. 48 ¶¶ 14, 16. The Defendants contend that the two unidentified young men remained in the courtyard and that the Defendants did not move closer to Pearson and Hatton because Pearson and Hatton were nearby the whole time. D. 52 ¶¶ 14, 16. The parties agree that Hayward forcibly shoved Hatton back multiple times towards the rear door of 60 Joy Street, causing Hatton to stumble. D. 48 ¶ 18; D. 52 ¶ 18. Hatton asked Hayward a question, variously described as "What are you doing harassing these kids," D. 52-4 at 16, "what's going on," D. 49-3 at 31, and "what are you doing? What's going on?" D. 52-1 at 29. Neither officer answered the question. D. 48 ¶ 19; D. 52 ¶ 19. Hatton then stated that he would "call the police on the police." D. 48 ¶ 20; D. 52 ¶ 20. Hatton contends that he said this statement

calmly and the Defendants contend that Hatton was yelling.  Id.  Hatton then walked toward the rear door of 60 Joy Street to make the telephone call, but instead then turned around back towards the officers.  D. 48 ¶ 21; D. 52 ¶ 21.  Hatton then stated that he would need the officers' names and numbers for the report, although the parties again dispute whether Hatton was speaking in a normal tone or yelling at this point.  D. 48 ¶ 23; D. 52 ¶ 23.  The officers did not provide Hatton with that information.  D. 48 ¶ 26; D. 52 ¶ 26.  Hatton then said "I guess I'll have to get them myself."  D. 48 ¶ 37; D. 52 ¶ 27.  Hatton then moved toward Mullan, although the parties dispute whether Hatton walked or charged towards Mullan.  D. 48 ¶ 28; D. 52 ¶ 29.  Hatton stopped moving towards Mullan at some point and the parties dispute whether Hatton was then right in front of Mullan, D. 52-4 at 22, D. 52 ¶ 30, or two and a half feet away from Mullan, D. 48 ¶ 30.  Hatton then extended his right index finger towards Mullan's badge.  D. 44 ¶ 30; D. 47 ¶ 30.  Hatton contends that he reached his finger out towards Mullan's badge to read the numbers on the badge.  D. 52 ¶ 31; D. 49-3 at 45.  The parties agree that there was then some physical contact between Hatton's finger and the badge.  D. 48 ¶ 32; D. 52 ¶ 32.  In his deposition, Hatton stated that he "felt . . . a brush on the trip of my right index finger" and "couldn't understand" how his finger had come into contact with the badge.  D. 49-3 at 45-46.  In response to an interrogatory, Hatton stated that the contact "seemed to have been caused by Officer Mullan moving his chest toward my finger."  D. 49-8 at 7.  The Defendants contend that the contact was caused by Hatton grabbing the badge.  D. 52 ¶ 31.  Hatton contends that the contact was "extremely light and extremely brief," D. 48 ¶ 32, while the Defendants contend that Hatton used his whole hand to grab the badge, D. 52 ¶ 32.

The parties agree that after Hatton's finger came into contact with Mullan's badge, Mullan performed a wrist lock, brought Hatton to the ground, placed Hatton in handcuffs, and informed

Hatton that he was under arrest. D. 44 ¶ 39; D. 47 ¶ 39. The parties dispute the level of force used by Mullan in doing so. D. 48 ¶ 35; D. 52 ¶ 35. Hatton contends that he hit the ground face-first, but the Defendants dispute this contention. D. 48 ¶ 35; D. 52 ¶ 35. Hatton contends that he sustained bruises and scrapes from the incident. D. 44 ¶ 41, D. 47 ¶ 41. The parties agree that Mullan then lifted Hatton off the ground, escorted him to the police vehicle, and took him to the station, although the parties dispute whether Hayward also participated in this process. D. 44 ¶¶ 40, 43, 44; D. 47 ¶¶ 40, 43, 44; D. 48 ¶ 37; D. 52 ¶ 37. The parties agree that Mullan wrote the incident report, but disagree regarding whether Hayward participated in a conversation with Mullan regarding the incident as Mullan was writing the report. D. 44 ¶ 43; D. 47 ¶ 43. Hatton went through the booking process and Hayward participated in the booking process by performing a search of Hatton. D. 44 ¶ 43; D. 47 ¶ 43; D. 49-2 at 5; D. 48 ¶ 37; D. 52 ¶ 37. The parties agree that Hayward and Hatton had a brief conversation during the booking process, wherein Hatton said to Hayward that he was "sorry that things happened the way they did." D. 44 ¶ 44; D. 47 ¶ 44; D. 44-2 at 54.

Hatton was subsequently charged with assault and battery on a public employee and disorderly conduct, but those charges were subsequently dismissed for want of prosecution. D. 44 ¶¶ 42, 47; D. 47 ¶¶ 42, 47.

## IV.    Procedural History

Hatton filed his complaint on June 29, 2016. D. 1. The Defendants have now moved for summary judgment. D. 42. The Court heard argument on the motion and took the matter under advisement. D. 58.

## V.    Discussion

### A.    **False Arrest**

A false arrest claim under either Section 1983 or state law requires a showing that the officer did not have probable cause to perform the arrest.  Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004).  "Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators."  Id.  The Defendants contend that there was probable cause to arrest Hatton for both assault and battery on a public official, in violation of Mass. Gen. L. c. 265 § 13D, and disorderly conduct.  The Defendants also contend that, even if there was no probable cause, Hayward was not sufficiently involved in the arrest to be held liable for a false arrest claim.

#### 1.    *Assault and Battery on a Public Employee*

Assault and battery on a public official, under Mass. Gen. L. c. 265 § 13D, requires "purposeful and unwelcome contact with a person the defendant knows to be a law enforcement officer actually engaged in the performance of official duties."  United States v. Santos, 363 F.3d 19, 23 (1st Cir. 2004) (citation omitted).  The Defendants contend that the undisputed facts show that Mullan reasonably concluded that the elements of that crime were satisfied.  D. 32 at 5.  Hatton responds that the undisputed facts fail to show that Mullan could reasonably have concluded that Hatton purposefully caused the contact between himself and Mullan, because the record reveals a factual dispute whether Hatton or Mullan initiated the contact.  D. 50 at 3.  The Defendants reply that, regardless of whether Hatton or Mullan initiated the contact, Mullan could reasonably have concluded, once he became aware of the contact, that Hatton had purposefully caused the contact. D. 43 at 5.  In support of this argument, they cite the First Circuit's statement that it has "disclaimed

any unflagging duty on the part of law enforcement officers to investigate fully before making a probable cause determination." Acosta, 386 F.3d at 11.

It remains, however, a disputed issue of fact whether Mullan caused the contact between Hatton's finger and Mullan's badge. Hatton stated in his interrogatory response that, after he leaned in to read Mullan's badge number, he "did not put [his] finger on the badge or any other part of Mr. Mullan. [His] finger very lightly brushed sideways against the badge . . . The contact . . . seemed to have been caused by Officer Mullan moving his chest toward my finger." D. 49-8 at 7. Hatton also testified in his deposition that, when he leaned in with his finger to read Mullan's badge number, he "felt this . . . brush on the tip of my right index finger . . . and right at that moment [] I thought why did that happen, [] I couldn't understand why I'd [] come into contact with the badge." D. 49-3 at 45-46. If Mullan caused the contact, and was aware of the same, there would be no way for him to reasonably conclude that Hatton had purposefully initiated the contact, and thus no way for Mullan to reasonably conclude that Hatton had committed the crime of assault and battery on a public official. Thus, summary judgment is not appropriate as to this issue.

The Defendants also raise the qualified immunity defense. D. 43 at 15. An official is entitled to qualified immunity with respect to a Section 1983 claim if "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Cox v. Hainey, 391 F.3d 25, 29–30 (1st Cir. 2004). The invocation of qualified immunity does not, however, change the outcome. The constitutional right at issue, the right to be free from arrest without constitutionally adequate probable cause, is clearly established. Id. at 30. It is similarly clearly established that an element of the

Massachusetts crime of assault and battery on a public official is that the touching must be intentional. Santos, 363 F.3d at 23. There is no dispute regarding whether a particular legal proposition has or has not been clearly established; rather, the parties only disagree on the actual underlying facts, and it is inappropriate to grant a qualified immunity defense at summary judgment where the defense is premised on a factual dispute. See Penn v. Escorsio, 764 F.3d 102, 112 (1st Cir. 2014); Prokey v. Watkins, 942 F.2d 67, 73 (1st Cir. 1991) (holding that "if what the policeman knew prior to the arrest is genuinely in dispute, and if a reasonable officer's perception of probable cause would differ depending on the correct version, that factual dispute must be resolved by a fact finder").

2.    *Disorderly Conduct*

An individual is guilty of the crime of disorderly conduct under Massachusetts law if "(1) he creates a hazardous or physically offensive condition by an act that serves no legitimate purpose of the individual; (2) his actions are reasonably likely to affect the public; and (3) he either intended to cause public inconvenience, annoyance or alarm, or recklessly created public inconvenience, annoyance or alarm." Damon v. Hukowicz, 964 F. Supp. 2d 120, 138 (D. Mass. 2013). The Defendants contend that the undisputed facts show that Mullan reasonably believed that Hatton committed the crime of disorderly conduct, because it is undisputed that the Mullan and Hayward had not yet checked the two unidentified young men for weapons before the arrest of Hatton, creating a dangerous situation, in which Hatton came close to Mullan, was yelling at him, and made contact with him. D. 43 at 6. Taking the facts in the light most favorable to Hatton, however, the unidentified young men had left the courtyard by this point and the officers had returned to confront Hatton; Hatton was speaking in a reasonable tone of voice to the officers; Hatton was two to three feet away from Mullan and had an obvious, non-threatening reason (reading a badge after Mullan refused to identify himself) for approaching him; and Mullan escalated the situation by

initiating the contact with Hatton. Under those circumstances, nothing about Hatton's conduct would have constituted a hazardous or physically offensive condition, and thus Mullan could not have reasonably believed that Hatton committed the crime of disorderly conduct.

### 3. Hayward's Role

The Defendants also contend that the undisputed record shows that Hayward did not initiate the arrest and therefore cannot be held liable. D. 43 at 13. An officer's "mere presence" at the scene of an arrest does not render him liable for a false arrest claim arising out of that arrest. Calvi v. Knox County, 470 F.3d 422, 428 (1st Cir. 2006). If, however, a non-arresting officer "acts jointly" with an arresting officer, the non-arresting officer may also be held liable. Mullen v. Town of Falmouth, No. Civ. A. 88-2769-MLW, 1995 WL 464913, at *2-3 (D. Mass. Mar. 7, 1995). Taking the facts in the light most favorable to Hatton, the non-movant, Hayward shoved Hatton towards the building; saw Hatton request Mullan's name and badge number; observed Mullan initiate contact with Hatton and then arrest him; assisted Mullan with the booking process; and discussed the filing of the arrest report with Mullan. These facts would be sufficient for a reasonable jury to find that Hayward took an active role and acted jointly with Mullan in arresting Hatton. The Defendants' reliance on Eason v. Alexis, 824 F. Supp. 2d 236, 242 (D. Mass. 2011) does not warrant a different outcome here. In that case, the court declined to find joint action to arrest the plaintiff where the non-arresting officer did not touch the plaintiff, did not accompany the plaintiff to the hospital after the arrest, and did not participate in the post-arrest criminal proceedings. Id. By contrast, here, under Hatton's version of the facts, Hayward shoved Hatton in a sequence of events leading to arrest and participated in the post-arrest booking and contributed to information for the arrest report. Thus, there is a genuine dispute of material fact regarding whether Hayward acted jointly with Mullan in arresting Hatton.

### B.      **Retaliatory Arrest**

In pursuing a claim for retaliatory arrest under Section 1983, a plaintiff must prove that his conduct was constitutionally protected and that the protected conduct was a "motivating" factor in the decision to take the retaliatory action.  Nuon v. City of Lowell, 768 F. Supp. 2d 323, 335 (D. Mass. 2011) (citing Tatro v. Kervin, 41 F.3d 9, 18 (1st Cir. 1994)).  The First Circuit has held that, in some situations, activity is not protected where that activity is interfering, or about to interfere, with the performance of a police officer's duties.  Gericke v. Begin, 753 F.3d 1, 8 (1st Cir. 2014).

The Defendants first contend that Hatton's action invaded Mullan's bodily integrity and interfered with an investigation, moving it outside the realm of protected First Amendment conduct.  D. 43 at 10.  The record, however, suggests otherwise.  As discussed above, under Hatton's version of the facts, Mullan rather than Hatton initiated the contact and Mullan's lawful investigation of the two unidentified young men had concluded by the time of Mullan's interaction with Hatton.  Thus, there is a genuine dispute of material fact regarding whether Hatton engaged in constitutionally protected conduct.

The Defendants next contend that the undisputed record shows that Hatton's protected conduct could not have been a motivating factor in Mullan's decision to arrest Hatton, because the arrest followed immediately after the contact between Hatton and Mullan.  D. 43 at 10.  Taking the contested facts in the light most favorable to Hatton, however, Hatton requested Mullan's name and badge number because he wanted to "call the police on the police"; Mullan refused to give Hatton that information; Hatton then leaned towards Mullan to read his badge; and Mullan then initiated the contact with Hatton and performed an arrest in a particularly forceful manner, causing Hatton to fall the ground face-first.  It would be permissible for a jury to infer from those facts that

Hatton's protected conduct – asking for Mullan's badge number and leaning forward to read the badge – was a motivating factor in Mullan's decision to arrest Hatton.

The Defendants also argue that they are entitled to qualified immunity with respect to the retaliatory arrest claim, noting that some courts also impose the requirement that the plaintiff show that the arrest was not supported by probable cause. D. 43 at 17. Even if the Defendants are correct that it is not clearly established that an arrest supported by probable cause may still violate the First Amendment in some circumstances, the Court cannot say that there is an undisputed record showing probable cause for arrest, and thus summary judgment as to this count would be inappropriate.

### C.     Excessive Force

In evaluating whether an officer used excessive force in violation of a plaintiff's constitutional rights, the key question is "whether 'the defendant officer employed force that was reasonable under the circumstances.'" Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010) (quoting Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007)). The inquiry requires weighing the severity of the crime at issue, whether the suspect posed a safety risk to the officers or others, and whether the suspect was actively resisting arrest or attempting to flee. Id. The Defendants contend that the undisputed record shows that Hayward did not use excessive force against Hatton, and that Hayward is entitled to qualified immunity as to this issue. D. 43 at 17.

The Defendants rely on the First Circuit's statement that "incidental contact – say, a 'gratuitously violent shove' – may be within the realm of conduct protected by qualified immunity." Morelli v. Webster, 552 F.3d 12, 25 (1st Cir. 2009) (quoting Saucier v. Katz, 533 U.S. 194, 208 (2001)). According to the version of the facts most favorable to Hatton, Hayward administered not one gratuitously violent shove, but rather repeated shoves to Hayward, and did

so in the absence of facts that would support a reasonable officer finding probable cause, the absence of any apparent safety risk, and the absence of any indication that Hatton was resisting arrest (as Hatton was not being arrested at the time Hayward shoved him) or attempting to flee. While "not every push or shove . . . violates the Fourth Amendment," Saucier, 533 U.S. at 209 (citation omitted), it is clearly established that even a shove, if sufficiently unjustified, can ground an excessive force claim. See Reese v. Herbert, 527 F.3d 1253, 1272 (11th Cir. 2008) (holding that "even de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect" (quoting Zivojinovich v. Barner, 525 F.3d 1059, 1071 (11th Cir. 2008)).

### D.    Malicious Prosecution

To make out a claim for malicious prosecution under federal law, a plaintiff must show that the defendant "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013). A claim for malicious prosecution under Massachusetts law requires the additional component of "actual malice." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). The Defendants first contend that they are entitled to summary judgment because the undisputed record shows that there was probable cause for the arrest, which the Court has already rejected. D. 43 at 8. The Defendants further contend that the undisputed record shows that Mullan did not have any "actual malice" towards Hatton that led to the arrest, because the arrest occurred immediately after the contact between Hatton's finger and Mullan's badge; Mullan's remarks to Hatton after the incident were only related to the booking process; and Hatton apologized during the booking process. D. 43 at 8. But coming to that conclusion would require drawing inferences from those facts to the underlying motive of the officers in favor of the Defendants, which is not permitted at summary judgment. Moreover, as discussed with respect to

the retaliatory prosecution claim, a reasonable jury could conclude that Mullan's decision to arrest Hatton was motivated by Hatton's criticism of Mullan and his questions of Mullan. For the same reasons, a jury could reasonably infer from those same facts that Mullan acted with actual malice.

The Defendants also contend that because Hayward did not arrest Hatton, the undisputed record establishes that Hayward cannot be held liable for the malicious prosecution claim. D. 43 at 13. But, for the same reasons described with respect to the false arrest claim, there is a genuine dispute of material fact regarding whether Hayward acted jointly with Mullan in arresting Hatton, so summary judgment would be inappropriate with respect to Hayward.

Finally, the Defendants contend that they are both entitled to qualified immunity with respect to the malicious prosecution claim. But, as with the false arrest claim, there is genuine dispute of fact regarding the underlying circumstances of the arrest, and under the version of the facts most favorable to Hatton, Mullan and Hayward would not be entitled to qualified immunity because any reasonable officer would have understood a prosecution under those circumstances to be a violation of Hatton's constitutional rights.

E.     **Massachusetts Civil Rights Act ("MCRA")**

To prevail on a claim under the MCRA, a plaintiff must show that "1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation, or coercion." Davis v. Rennie, 264 F.3d 86, 111 (1st Cir. 2001) (quoting Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 395 (1996)). The Defendants contend that the undisputed record shows that Hatton cannot make out a claim under the MCRA because there was probable cause for the arrest. D. 43 at 11-12. The Court has already rejected the argument that the undisputed record shows that the Defendants had probable cause for the arrest.

The Defendants next contend that the record does not show any threat made by the Defendants to Hatton. D. 43 at 11-12. However, Hatton may also state a claim for relief under the MCRA by showing that the Defendants engaged in "coercion or intimidation." An arrest without probable cause can constitute coercion. Nuon, 768 F. Supp. 2d at 335 n.8 (citing cases).

Finally, the Defendants contend that the record does not show that they either interfered with or attempted to interfere with Hatton's protected conduct. D. 43 at 12. Specifically, they argue that Hatton's protected conduct had concluded by the time of the arrest and that they did not arrest Pearson, who had also engaged in protected conduct. D. 43 at 12. The record, taken in the light most favorable to Hatton, shows that Hatton participated in a conversation with Pearson wherein Pearson criticized the officers; Hayward then shoved Hatton; Hatton then stated that he intended to "call the police on the police," asked for the Defendants' name and badge numbers, leaned forward to try to read Mullan's badge, and was bumped into by Mullan, who then arrested Hatton in a rough manner. The record does not show any direct evidence of the officers' motivations in either shoving Hatton or subsequently arresting him. While this is a close question, a reasonable jury could infer from that sequence of events that the Defendants meant to prevent Hatton from engaging in the protected conduct of obtaining their badge numbers to file a complaint and arrested Hatton to do so. The fact that Pearson was not also arrested is immaterial to the reasonableness of this inference, as Pearson was not attempting to obtain their badge numbers to file a complaint.

## VI.    Conclusion

For the foregoing reasons, the Court DENIES the Defendants' motion for summary judgment, D. 42.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge